UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL NO: 1:19-CV-00564 |
| Plaintiffs | : | (Magistrate Judge Schwab) |
| v. | : | |
| JOSEPH A. FORREST, | : | |
| Defendant | : | |

## **MEMORANDUM OPINION**

### **I. Introduction.**

This case concerns a dispute between Plaintiff United States of America and Defendant Joseph A. Forrest about who is entitled to the proceeds from the sale of a crop of corn. Presently before the court is the United States' motion for default judgment against Forrest. For the reasons set forth below, we will grant the motion for a default judgment and enter judgment against Forrest and in favor of the United States in the amount of $35,126.65.

### **II. Background and Procedural History.**

The United States began this action by filing a complaint claiming that Forrest converted proceeds from the sale of a crop of corn as to which the United States had a security interest. More specifically, the United States alleges that the

Farm Service Agency ("FSA") with the United States Department of Agriculture lent James and Natalie Weller $185,000 pursuant to the Consolidated Farm and Rural Development Act.  The secure this debt, the Wellers executed and delivered to the FSA security agreements in their crops and any proceeds from those crops as well as financing statements, which were recorded with the Pennsylvania Department of State.  Thus, according to the United States, the FSA had a valid, perfected, first-priority security interest in the crops and any proceeds from those crops.  As of March 11, 2019, the balance due on that loan was $50,165.13 with interest accruing daily in the amount of $1.5302.

      The Wellers leased a farm from Forrest.  On that farm, they ran a dairy operation and grew corn.  Sometime after September 25, 2017, the Wellers ceased farming operations and vacated the farm, leaving approximately 50 acres of fully grown corn.  An appraisal by the FSA on January 8, 2018, valued the corn at $34,000.  According to the United States, even after vacating the farm, the Wellers possessed the right to harvest the corn, which they planted and owned.

      FSA informed Forrest that it possessed a valid, first-position security interest in the corn and that it was entitled to the proceeds from the sale of any of the corn.  In early November 2017, Forrest arranged for the harvest of approximately 20 acres of the corn and sold that corn for a net amount of $7,829.04.  In January and February of 2018, Forrest arranged for the harvest of an unknown number of

additional acres of corn and sold that corn for a net amount of $16,639.45.  And, according to the United States, in May 2018, Forrest arranged for the harvest of the remaining acres of corn and sold it to an unknown party for an unknown amount.  FSA demanded that Forrest pay over the proceeds from these sales, but he refused.

The United States claims that by converting the proceeds from these sales to his own use, Forrest deprived the FSA of its property interest in the proceeds.  The United States demands judgment against Forrest "for the total amount of net proceeds received from the sales of corn grain harvested from the leased premises to various entities or the amount due FSA on its indebtedness to [sic] James R. Weller and Natalie S. Weller at the time judgment is entered, whichever is less, together with interest at the legal rate thereafter until the date of payment." *Doc. 1* at 8 (Wherefore Clause).

After Forrest filed an answer to the complaint, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.  Initial attempts at settlement were unsuccessful, and we issued a case-management order setting forth case-management deadlines, including a deadline for the completion of discovery.  Although we continued to encourage the parties to attempt to settle the case, settlement did not occur.  The case-management deadlines were amended several times.

The United States eventually filed a letter stating that Forrest had not responded to discovery requests. More specifically, the United States asserted that it never received any responses to its discovery requests and defense counsel had not responded to emails regarding the same. We then ordered Forrest to file with the court a response to the United States' letter. After Forrest failed to respond, we ordered that the United States may file a motion to compel discovery.[1]

The United States subsequently filed a motion to compel discovery and a brief in support of that motion. After Forrest failed to file a brief in opposition in accordance with Local Rule M.D. Pa. L.R. 7.6, we deemed Forrest to not oppose the motion to compel. And granting the motion to compel, we ordered Forrest to provide full and complete answers to the United States' discovery requests on or before January 4, 2021.

Later, given that we had granted the United States' unopposed motion to compel and that the discovery and dispositive motions deadlines had passed, but the parties had not filed anything on the docket, we ordered the parties to file a report on the status of this case. The United States filed a status report, stating that

---

[1] Such an order was necessary before the United States could file a motion to compel discovery because the undersigned's practice (of which the parties were informed at the initial case management conference) is that discovery disputes shall be brought before the court by way of a letter, rather than a motion. Here, because Forrest failed to respond to the United States' letter as ordered, a motion to compel discovery was the next appropriate step.

it had not received Forrest's discovery responses as ordered by the court. Forrest never responded to the order for a status report. We then ordered the United States to inform the court if it intends to proceed with this case, and if so, how it intends to proceed.

The United States responded by filing a motion for default judgment as well as a brief and documents in support of that motion. Forrest did not respond to the motion for default judgment. We then scheduled an evidentiary hearing on the motion for default judgment. In the order scheduling the hearing, we observed that a hearing was necessary so that we can adequately address all the factors that the court must balance in deciding whether to enter a default judgment and so that, if a default judgment is entered, we can determine the proper measure of damages. And to ensure that Forrest himself had notice of the motion for default judgment and the opportunity to respond to that motion, we directed the Clerk of Court to send a copy of the order scheduling the hearing along with the United States' motion for default judgment and brief in support to Forrest himself as well as his attorney of record. *See Dunbar v. Triangle Lumber & Supply Co.*, 816 F.2d 126, 129 (3d Cir. 1987) (concluding "that any motion, whether by court or counsel, seeking an effective dismissal or default judgment based on an apparent default on the part of a litigant's counsel be pleaded with particularity and with supporting material and that where the

papers demonstrate reasonable grounds for dismissal on that basis the court shall direct the clerk of the court to mail notice directly to the litigant of the time and place of a hearing on any such motion, reasonably in advance of the hearing date").

A hearing was held via Zoom on December 9, 2021. Counsel for the United States appeared at the hearing. Counsel for Forrest—but not Forrest himself—also appeared at the hearing.

Following the hearing and in accordance with the discussion at the hearing, we ordered the United States to file a supplemental brief addressing the basis for its calculation of damages. The United States filed a supplemental brief. After considering that supplemental brief, we still had questions regarding the basis for the United States' damage calculations and its assertion that the proceeds from the sale of the corn could reasonably equal the total amount due on the loan from FSA to the Wellers. Thus, we again ordered the United States to file another supplemental brief addressing the basis for its calculations of the damages. More specifically, we ordered the United States to set forth calculations regarding the bushels of corn that it knows Forrest sold and the net proceeds from those sales. The United States was also ordered to set forth reasonable calculations for how many additional bushels of corn Forrest may have sold and reasonable calculations for the net proceeds from that sale or sales. We observed that we understand that

because Forrest failed to respond to discovery, the United States does not have actual figures for these latter calculations. Nevertheless, we stated that it needs to show that there is a reasonable basis for the court to conclude that the net proceeds from Forrest's sales of the corn correspond to the damages that it is seeking. On January 14, 2022, the United States filed its second supplemental brief.

Based on the United States' motion, briefs, and documents and on what transpired at the hearing, we will grant the motion for default judgment, and we will enter judgment against Forrest and in favor of the United States in the amount of $35,126.65.

### III. Discussion.

Federal Rule of Civil Procedure 37(b) provides that the court may impose sanctions on a party who fails to comply with a discovery order. Rule 37(b)(2) lists possible sanctions for failing to obey a discovery order, and a default judgment is one such sanction.

Even though a default judgment is an available sanction, it is a drastic sanction that "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982). In other words, "cases should be decided

on the merits barring substantial circumstances in support of the contrary outcome." *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 132 (3d Cir. 2019).

Decisions regarding dismissal of actions or default judgment for failure of a party to prosecute or defend an action rest in the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel College,* 296 F.3d 184, 190 (3d Cir. 2002). But that discretion, while broad, is governed by the following factors, commonly referred to as the *Poulis* factors, which the Court must balance in deciding whether to dismiss a case:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). "The court should consider all six factors but need not find all six to award sanctions." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021). And no single factor is dispositive. *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008). In this case, an assessment of the *Poulis* factors leads us to conclude that a default judgment should be entered in this action.

The first *Poulis* factor is the extent of the party's personal responsibility. Here, Forrest is represented by counsel. At the hearing, Forrest's counsel asserted

that the default was largely his fault as he and Forrest had lost touch.  Counsel also reported, however, that Forrest knows about this hearing, and that the defense has nothing to put on.  Given this, we stated at the hearing that we considered the motion for default judgment to be unopposed.  At the end of the hearing, we asked defense counsel if Forrest was aware that a default judgment would be entered against him, and counsel responded that Forrest was aware.  Here, we are not dealing with one missed deadline or even a few.  Rather, we have a continuing pattern of failure to respond to discovery and court orders.  And even after it was clear that Forrest himself was aware of the defaults, he did not appear at the hearing, offer to respond to the United States' discovery, or in any way oppose the United States' motion for default judgment.  Thus, he bears at least some responsibility for the defaults in this case, and he has made no attempt to defend against the United States' motion for a default judgment.

The second *Poulis* factor is prejudice to the adversary.  Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).  Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 222 (3d Cir. 2003).  "[T]he burden imposed by impeding a party's ability to prepare effectively a full

and complete trial strategy is sufficiently prejudicial." *Id.*  In this case, Forrest's failure to answer discovery, to litigate this case, and to comply with court orders frustrates and delays resolution of this action.  Such failures can be seen to prejudice the United States, which seeks a timely resolution of the case.

The third *Poulis* factor is a history of dilatoriness.  While "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe,* 538 F.3d at 261, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994).  A "party's problematic acts must be evaluated in light of [his] behavior over the life of the case." *Id.* at 875.  In this case, Forrest has a history of dilatoriness: he failed to respond to the United States' discovery requests, he failed to file with the court a response to the United States' discovery letter as ordered, he failed to file a brief in opposition to the United States' motion to compel discovery, he failed to comply with the order compelling him to provide discovery, he failed to file a status report as ordered, he failed to file a brief in opposition to the United States' motion for a default judgment, and even though he had notice of the evidentiary hearing, he failed to offer anything in opposition to the motion for default judgment at the hearing.  Thus, Forrest has a history of dilatoriness.

The fourth *Poulis* factor is whether the conduct was willful or in bad faith. "Willfulness involves intentional or self-serving behavior." *Adams,* 29 F.3d at 875. Here, the multiple failures over multiple months, including the failure to respond to the motion for a default judgment, leads to an inference that Forrest has willfully abandoned this case.

The fifth *Poulis* factor is the effectiveness of alternate sanctions. Default judgment is an extreme sanction, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering such. *Poulis,* 747 F.2d at 868. As the United States points out, in addition to a default judgment, Fed. R. Civ. P. 37(b)(2) lists other possible sanctions, such as directing that certain matters or facts be taken as established, that the disobedient party be prohibited from supporting or opposing certain claims or defenses, the pleadings be stricken, or that the case be stayed until the court's order is obeyed. But given that it appears that Forrest has abandoned this action, we agree with the United States that such lesser sanctions would only inevitably lead to dismissal down the road after additional delay. Therefore, such sanctions would not be effective in this case. Moreover, Forrest's failure to oppose the motion for a default judgment leads to an inference that further orders to him would not be effective. In this case, no sanction short of a default judgment would be effective.

The sixth and final *Poulis* factor is the meritoriousness of the claim or defense. Here, since it is the United States as the plaintiff that is seeking the sanction of a default judgment, we look to whether Forrest has a meritorious defense. Forrest filed an answer denying some of the factual allegations in the complaint. Thus, he may have a meritorious defense. But he has not proffered support for his denials or expounded upon his defenses, and he now appears to have abandoned this case. Thus, this factor is not sufficient to outweigh those factors that point in favor of entering a default judgment.

In sum, the *Poulis* factors weigh in favor of a default judgment. It appears that Forrest has abandoned this case. Thus, we will enter a default judgment. The question then is what damages the court should award to the United States.

The United States requests that the court enter judgment in the amount of "$50,565.13, consisting of a $50,165.13 loan balance together with $400.00 in costs and fees, plus interest at [$1.5302 per day]² from March 11, 2019 to the date of the order and thereafter until the debt is paid in full." *Doc. 41* at 1. We conclude, however, that the United States has not shown that it is entitled to this

---

² In its motion, the United States requests interest at 1.5302%. *See doc. 41* at 1. But in its supplemental brief, the United States notes that it "inadvertently referred to the rate of 1.5302 as a percentage, which was incorrect." *Doc. 47* at 2 n.1. Rather, the United States continues, "[t]he rate should have been referred to as $1.5302 per day, as explained below." *Id*. Later, the United States explains that the daily interest "amount is calculated using the promissory note interest rate of 1.125% per annum." *Id*. at 5 (citation to exhibit omitted).

amount of damages. We will award the United States $35,126.65, which consists of $34,000 (the amount the FSA appraiser estimated the value of the corn to be) plus pre-judgment interest.

We repeatedly asked the United States to explain why we should equate the loan balance of the Wellers with the amount Forrest allegedly converted from the sale of the corn. With respect to our last order to the United States for a second supplemental brief, we specifically stated that the United States shall set forth calculations regarding the bushels of corn that it knows Forrest sold and the net proceeds from those sales. The United States was also directed to set forth reasonable calculations for how many additional bushels of corn Forrest may have sold and reasonable calculations for the net proceeds from that sale or sales. Observing that we understand that because Forrest failed to respond to discovery, the United States does not have actual figures for these latter calculations, we nevertheless stated that the United States needs to show that there is a reasonable basis for the court to conclude that the net proceeds from Forrest's sale of the corn corresponds to the damages that it is seeking.

In its second supplemental brief, the United States attempts to show that there is a good faith basis to conclude that Forrest's proceeds from the sale of corn was equal to or greater than the damages that it is seeking. The United States begins by explaining that there are "three variables relevant to determining the

total proceeds from the sale of a crop of corn": (1) the number of acres of corn; (2) the yield, i.e., bushels per acre.; and (3) the price per bushel. *Doc. 49* at 2. So far so good. Then, the United States stresses that it "has no actual data to determine what the defendant's proceeds were, nor whether the defendant wasted any of the harvestable crop, nor whether the defendant's costs associated with harvesting, processing, and the sale of the crops was reasonable." *Id*. We understand that because Forrest did not respond to discovery, the United States does not have that information from Forrest. The United States then attempts "using the fragmentary and unverified information available," and varying the inputs for the three variables— acreage, yield, and price per bushel—to set forth calculations for possible scenarios regarding the sale of the corn. *Id*. at 2–5. While we agree with the United States' methodology, the assumptions that it makes regarding the inputs for the three variables are not supported by the record.

In its complaint the United States alleges that, on January 8, 2018, the FSA appraised the value of the corn at $34,000. *Doc. 1* ¶ 11. Before we address the United States' assumptions regarding the inputs for the three variables set forth above and because the United States seeks to use different inputs for those variables than the inputs used in the FSA appraisal, we explain the basis for the $34,000 appraisal. That appraisal provided, in pertinent part: "Borrower averaged 242 bu/acre for corn harvested and sold to TP. I estimated 200 bu/acre to account

14

for deer damage and weather damage. Corn price from Keystone Commodity is $3.40/bu. 50 acres x 200 bu/acre =10,000 bu. x $3.40 = $34,000.00[.]" *Doc. 1-2* at 43.

Asserting that the number of acres of corn is unknown, the United States contends that it is reasonable to estimate that the number of acres of corn at issue was between 50 and 60 acres. In support of the 50-acre estimate, it points to the FSA appraisal. In support of the 60-acre estimate, it points to a July 2018 notice that the FSA sent to Forrest demanding that he pay the proceeds from the corn and that references 60 acres. *Doc. 1-2* at 54. But the United States fails to offer any explanation for why the acreage changed from 50 acres in the appraisal to 60 acres in this notice. Without such an explanation, we will not accept the offhand reference to 60 acres in the notice[3] when the appraisal used 50 acres. Thus, we will base our damages calculations on 50 acres.

The United States asserts that the yield, or bushels per acre, is also unknown. It points out that the FSA appraisal noted that although the Wellers had averaged 242 bushels per acre, the appraiser lowered the estimate of bushels per acre to 200 to account for deer and weather damage. And the United States uses 242 bushels per acre for some of its calculations. But, again, it offers no explanation for why

---

[3] For all we know, the reference in the notice could have simply been a typographical error.

the court should not accept the appraiser's estimate of bushels for per acre. Why, for example, is deer and weather damage no longer an issue? We do not know whether the appraiser used a lower yield to account of deer and weather damage because the corn crop was left standing longer than usual given that the Weller's abandoned the farm. We do understand that because Forrest did not answer discovery, the United States does not know how many bushels of corn he actually sold. But the United States still must provide a reasonable basis for its assumptions, and using a number for the bushels per acre different from the number used by the FSA appraiser requires at least some support or explanation, which the United States has not provided here. Thus, we will base our damages calculations on 200 bushels per acre.

As to the price per bushel, the United States notes that the FSA appraisal used $3.40 per bushel, but some documents show that Forrest sold some of the corn for $3.70 and $3.80 per bushel. Although the United States does not have the actual price per bushel at which Forrest sold the rest of the corn because Forrest did not provide that information, the United States has not explained why it could not have presented evidence from another source of the price per bushel at which corn was selling at the relevant time. Thus, we are not inclined to use the higher $3.70 and $3.80 per bushel figures over the appraiser's $3.40 figure.

Further, although the United States mentions in its complaint that the corn processors charged Forrest for drying the corn, *see doc. 1* ¶¶ 14, 16, its calculations do not mention drying costs. Did the appraiser's $3.40 per bushel figure account for drying costs? We don't know. We also don't know why the United States' calculations do not address the cost to Forrest of harvesting the corn. Again, we recognize that because Forrest did not respond to discovery, the United States does not have actual figures. But it could have provided estimates for drying costs and harvesting costs from other sources. Because it did not do so, we will stick with the appraiser's $3.40 per-bushel figure.

In sum, the United States presents calculations that would support its request for damages. For example, using 60 acres of corn, at 242 bushels per acre, sold at $3.80 per bushel, the United States arrives at $55,176. *See doc. 49* at 4.[4] But as set forth above, the United States has not provided support for the inputs that it uses in its calculations. Accordingly, we will use the numbers used by the FSA appraiser to arrive at a figure of $34,000 (50 acres x 200 bushels per acres x $3.40 per bushel = $34,000).

---

[4] The United States provides numerous other calculations altering the inputs for the three variables in various ways. *See doc. 49* at 4, n.2.

The United States seeks prejudgment interest at a rate of 1.125 % per annum calculated from March 11, 2019.[5]  1.125% of $34,000 is $382.50.  We divide $382.50 by 365 (days in a year) to arrive at a daily interest figure of $1.05.  There are 1073 days from March 11, 2019, to today's date (February 16, 2022).  Thus, we will award the United States prejudgment interest in the amount of $1,126.65 ($1.05 x 1073 days = $1,126.65).

In sum, we will enter judgment in favor of the United States in the amount of $35,126.65 ($34,000 (the appraised value of the corn) + $1,126.65 (prejudgment interest) = $35,126.65) together with post-judgment interest.[6]

## IV. Conclusion.

Based on the foregoing, we will grant the United States' motion for default judgment (*doc. 41*) and enter judgment against Forrest and in favor of the United

---

[5]  The United States uses March 11, 2019, because that is the date of a declaration from David W. Poorbaugh, Farm Loan Chief—Pennsylvania State Office, Farm Service Agency, United States Department of Agriculture, stating the amount the Wellers owed the FSA as of that date. *See doc. 47-5* at 2–3.  The United States does not adequately explain the logic of using that date.  But because that date is after Forrest sold the corn, it favors Forrest.  Thus, we will use that date.  Further, since Forrest has not contested the interest rate, we will use the 1.125 % set forth by the United States.

[6]  28 U.S.C. § 1961 deals with post-judgment interest and provides how that interest is calculated.

States in the amount of $35,126.65 plus post-judgment interest.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge